# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

LaQuan Thompson,

    Petitioner,

v.

Jerry Howell, *et al.*,

    Respondents.

Case No.: 2:21-cv-00511-GMN-NJK

**Order**

This action is a pro se petition for a writ of habeas corpus brought by LaQuan Thompson, a prisoner incarcerated by the Nevada Department of Corrections. The petition is before the court for resolution on its merits. For reasons that follow, the petition is denied.

**I. BACKGROUND[1]**

In July 2014, a jury in the state district court for Elko County, Nevada, found Thompson guilty of trafficking in a schedule I controlled substance and transportation of a controlled substance. Evidence presented at trial established the following facts. On May 16, 2013, a car in which Thompson was a passenger was stopped by the Elko Police Department ("EPD"). The occupants of the car were (1) the driver, Heather Shine ("Shine"); (2) the right front passenger, Thompson; (3) the left rear passenger, Shine's minor child; and (4) the right rear passenger, Ryan Hector Rangel ("Rangel"). When he asked Rangel for his identification, Lieutenant Tyler Trouten ("Lt. Trouten") observed that Rangel, as he reached for his wallet, had the bulbous end

---

[1] The information in this section is taken from the state court record filed at ECF Nos. 11 through 16 and this court's own docket. For ease of reading, citations to the record are omitted in this section, but included as necessary to support of the court's analysis in Section III., below. In addition, the court makes no credibility findings or other factual findings in this section, which is merely a backdrop to the court's consideration of the issues.

of glass pipe commonly used to smoke methamphetamine sticking out of his pocket. Lt. Trouten asked Rangel to step out of the car and speak to Sergeant Matthew Locuson ("Sgt. Locuson"). Lt. Trouten also instructed Sgt. Locuson to arrest Rangel for possession of drug paraphernalia. As he got out of the car, Rangel attempted to flee and was quickly subdued and arrested.

Lt. Trouten then opened the front passenger side door and instructed Shine to turn off the vehicle and place the keys on top of the car. He saw that Thompson had a fist full of cash (later determined to be $211) in his right hand. In between the front passenger side door and the front passenger seat, he discovered a large plastic bag with several smaller bags inside containing what appeared to be significant amounts of methamphetamine. Thompson was placed under arrest. While searching Thompson incident to arrest, Lt. Trouten found three small, thumbnail size Ziploc bags approximately three quarters to an inch square (all empty and apparently unused) inside Thompson's left front pants pocket. Subsequent testing confirmed that the larger bag contained approximately 38 grams of methamphetamine.

The court entered a judgment of conviction in November 2014 sentencing Thompson to a term of 10 to 25 years for trafficking and a concurrent term of 12 months to 4 years for transportation. On direct appeal, Thompson argued that the State presented insufficient evidence at trial to sustain his conviction. The Nevada Court of Appeals rejected that argument and affirmed the judgment of conviction.

In September 2015, Thompson filed a state habeas corpus petition in the state district court. After an evidentiary hearing at which Thompson was represented by counsel, the court denied the petition on the merits. On appeal, Thompson argued that his trial counsel was ineffective for not obtaining or presenting exculpatory evidence, in particular, evidence related to methamphetamine found in Rangel's motel room. In March 2021, the Nevada Court of Appeals rejected that argument and affirmed the lower court's denial of post-conviction relief.

That same month, Thompson initiated this federal habeas corpus proceeding. Respondents moved to dismiss his petition arguing that Thompson had not exhausted state court remedies for any of his claims for relief, except for Ground 1. This court agreed and gave

Thompson the option of abandoning the unexhausted claims or moving for stay and abeyance. He chose the former. Thus, Ground 1 is the lone claim before the court for a decision the merits.

**II. STANDARDS OF REVIEW**

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). AEDPA provides the following standard of review:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

**III. DISCUSSION**

A. Ground 1

In Ground 1, Thompson claims both a deprivation of his right due process under *Brady v. Maryland*[2] and a deprivation of his right to effective assistance of counsel under *Strickland v. Washington*.[3] Only the *Strickland* claim remains because Thompson abandoned the unexhausted *Brady* claim. Thompson alleges that counsel was ineffective for not presenting evidence that, following Thompson's arrest, the police found 130 grams of methamphetamine in Rangel's motel room. According to Thompson, presentation of such evidence would have exonerated him because (1) Rangel's companion, Kilynn Baker ("Baker"), was willing to testify that the methamphetamine in the motel room belonged to Rangel and (2) testing of that

---

[2] 373 U.S. 83 (1963).

[3] 466 U.S. 668 (1984).

4

methamphetamine would have confirmed that it came from the same batch as the methamphetamine found in the car.

To establish a claim of ineffective assistance of counsel (IAC), a petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id*. at 687-88.  Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Having cited to the *Strickland* standard, the Nevada Court of Appeals in Thompson's post-conviction proceeding addressed the IAC claim he now raises as Ground 1 as follows:

> Thompson argues trial counsel was ineffective for failing to pursue or present exculpatory evidence at trial, specifically evidence of an additional 130 grams of methamphetamine found in Thompson's associate's motel room.  The district court found that it was trial counsel's intentional trial strategy to not introduce the motel room evidence because he believed the witness with that information could do more harm than good to Thompson's case.  These findings are supported by substantial evidence in the record.  We conclude Thompson has failed to demonstrate how trial counsel's performance fell below an objective standard of reasonableness. *See Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989) (Tactical decisions are virtually unchallengeable absent extraordinary circumstances.").  Further, even if trial counsel decided to present this evidence, Thompson has not demonstrated a reasonable probability of a different outcome at trial, because the methamphetamine that Thompson was convicted of trafficking was found next to him inside the vehicle in a place his associate could not reach.  Therefore, we conclude the district court did not err by denying this claim.

ECF No. 16-13 at 3.

Thompson's counsel, Brian Green ("Green"), testified at the evidentiary hearing on Thompson's state post-conviction petition. ECF No. 15-1 at 29-47.  According to his testimony, Green received discovery revealing that Baker was in the motel room when the EPD arrived to execute a search warrant and that, after the methamphetamine was discovered, she told the EPD

5

that Thompson, Rangel, and an unnamed third party were involved in bringing large amounts of drugs into Nevada. *Id*. at 35-36.  He also testified that he had his investigator attempt to interview Baker, but she would not cooperate with him. *Id*. at 36.  With no evidence refuting this testimony, the state district court reasonably found that Green had no way of knowing what Baker would say on the witness stand. ECF No. 15-2 at 6.  The state district court also found that "it is more likely that Ms. Baker would have implicated Petitioner in trafficking methamphetamine than not, and it was reasonable for Mr. Green not to call Ms. Baker as a witness." *Id*.  Because a fairminded jurist could agree with the state court's finding that Green's performance did not fall below the *Strickland* standard, this court must defer to the state court's decision. *See Shinn v. Kayer*, --- U.S. ---, 141 S. Ct. 517, 524 (2020) ("[I]f a fairminded jurist could agree with either [the] deficiency or prejudice holding, the reasonableness of the other is beside the point." (citation and internal quotation marks omitted)).

The Nevada Court of Appeals's conclusion that Thompson had failed demonstrate *Strickland* prejudice is also well-supported by the state court record.  Testimony presented at trial showed that it would have been nearly impossible for Rangel to have moved the bag of methamphetamine from the back seat to the location it was found in the car. ECF No. 12-6 at 24-29.  In addition, the State presented testimony that the Ziploc bags found inside Thompson's pocket and the cash he was holding in his hand suggested that he was selling drugs. *Id*. at 17, 32.

In sum, Thompson has not established that the state court's adjudication of the IAC claim in Ground 1 resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or in a decision that was based on an unreasonable determination of the facts.  Ground 1 is denied.

**IV. CONCLUSION**

For the reasons set forth above, Thompson is not entitled to habeas relief.

*Certificate of Appealability*

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).

Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed my determinations and rulings in adjudicating Thompson's petition, this court declines to issue a COA for its resolution of any procedural issues or any of Thompson's habeas claims.

**IT IS THEREFORE ORDERED** that Thompson's petition for writ of habeas corpus (ECF No. 5) is DENIED. The Clerk shall enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

**IT IS FURTHER ORDERED** that respondents' motion for extension of time (ECF No. 21) is granted *nunc pro tunc* as of May 31, 2022.

Dated: March 24, 2023

_____
U.S. District Judge Gloria M. Navarro